Henry Floyd **BROWN**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 16210.

United States Court of Appeals
Eighth Circuit.

April 26, 1960.

Edwin S. Baldwin, St. Louis, Mo., for appellant.

Frederick H. Mayer, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before SANBORN, VAN OOSTER-HOUT and MATTHES, Circuit Judges.

SANBORN, Circuit Judge.

Henry Floyd Brown on August 19, 1958, was charged by indictment with having, on or about June 20, 1958, transported a stolen motor vehicle in interstate commerce from Iowa to Missouri, knowing it to have been stolen, in violation of the Dyer Act, 18 U.S.C. § 2312. He entered a plea of not guilty, was tried to a jury on November 10, 1958, convicted on November 13, 1958, and sentenced on November 21, 1958, to five years imprisonment. On November 24, 1958, he filed notice of appeal and a motion for leave to appeal in forma pauperis. On January 7, 1959, the trial court (Judge Randolph H. Weber) denied appellant's motion for leave to appeal as a poor person, certifying that his appeal is frivolous and not taken in good faith.

Brown has moved this Court for leave to proceed on appeal from his conviction in forma pauperis, notwithstanding the certificate of Judge Weber that the appeal is not taken in good faith. See 28 U.S.C. § 1915(a). On September 25, 1959, this Court entered an order appointing counsel to see that procedural

requirements specified by the Supreme Court in such cases were met; to procure an agreed statement of the case, if possible; and to file a report pointing out what, if any, errors the trial court committed in certifying that the appeal is not taken in good faith. This Court first appointed, to assist Brown with his motion, Mr. Jack R. Mandel, of the Missouri Bar, who was his trial counsel. Mr. Mandel, at his request, was relieved of his appointment. Mr. Edwin S. Baldwin—of the St. Louis, Missouri, Bar—was finally appointed, and consented to serve and has fully and admirably complied with our order of September 25, 1959.

We have been furnished with the original papers of the District Court, including a detailed memorandum of Judge Weber stating fully his reasons for denying Brown leave to appeal in forma pauperis and the basis for his certificate that the appeal is frivolous and not taken in good faith. We have also a 273-page transcript of the evidence taken at the trial, containing virtually all the important evidence and including the arguments of counsel to the jury and the complete charge of the court. The transcript is supplemented by an agreed statement certified by the court, containing the testimony relative to Arkansas and Missouri stolen license plates found by federal agents in the car Brown had driven from Iowa to Missouri and Arkansas. Mr. Baldwin has filed his report and brief in support of the appellant's motion, and the United States Attorney has filed an answering brief. The motion has been argued and submitted.

The Government's evidence showed that on May 28, 1958, at Cedar Rapids, Iowa, Brown rented a Ford automobile from the Swab Drive Urself Agency, an affiliate of "Hertz"; that he represented that he wanted to use the car to go to Washington, Iowa, and would return it within 36 hours; that he made a deposit of $25.00, the minimum amount required in order to obtain the car; that he signed a rental contract agreeing, among other things, not to remove the car from the State without the written consent of the owner; that he drove the car that same day to St. Louis, Missouri; that he subsequently made trips to Arkansas and to Kansas City, Missouri; that at the time of his arrest by federal agents, on June 20, 1958, in a third floor room in a rooming house in St. Louis, he had the keys to the car; that he told the agents where the car was; that when they searched the car they found various sets of Arkansas and Missouri license plates; that the plates had been stolen; that the Iowa license plates formerly on the car had been removed; that one stolen Missouri license plate was on it; that the Iowa registration certificate which was attached to the steering wheel at the time the car was turned over to Brown was gone; that during the time Brown had the car, which was approximately 20 days, it had been driven more than 6,500 miles.

At the trial, Brown testified in his own behalf to the effect that he never intended to steal the car, had always regarded it as a rented car, had intended eventually to return it to the rental agency, and would have returned it, had the agents of the Federal Bureau of Investigation not upset his plans by arresting him. He testified that the stolen license plates in the car had been given to him; that he knew they were stolen; that he had a Missouri license plate on the car at the time it was picked up in St. Louis because he had, by leaving Iowa, become a conditional release violator and was afraid to use the Iowa license plates lest they attract attention to him.

The issues raised on behalf of Brown, which Mr. Baldwin believes are not plainly frivolous, are: (1) the sufficiency of the evidence to sustain Brown's conviction; (2) the admissibility of certain of the testimony of two of the defendant's witnesses, Mrs. Lottie Meyers and O'Neal H. Swedholm, to which objection was sustained; (3) the refusal of the trial court to instruct the jury that the rebuttal testimony of Edmund V. Kadell was for a limited purpose only; and (4) the failure of the court "to instruct the jury

that the intent of the defendant must have been to permanently deprive the owner of the use of the car."

Mr. Baldwin argues that there is sufficient substance in the issues raised to entitle Brown to have leave to appeal at Government expense.

 The question of Brown's intent when, by false pretenses, he obtained the car in Cedar Rapids, Iowa, on May 28, 1958, and on the same day drove it from Iowa to Missouri, and continued to drive it in Missouri and Arkansas until June 20, 1958, when he was arrested in St. Louis, was clearly a question of fact for the jury. The word "stolen" as used in the Dyer Act, 18 U.S.C. § 2312, "includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership * * *", and the Act was passed in furtherance of "the primary congressional purpose of eliminating the interstate traffic in unlawfully obtained motor vehicles." United States v. Turley, 352 U.S. 407, 417, 77 S.Ct. 397, 402, 1 L.Ed. 2d 430, 56 A.L.R.2d 1300. See and compare: Stewart v. United States, 8 Cir., 151 F.2d 386, 388; Davilman v. United States, 6 Cir., 180 F.2d 284, 285; Crawford v. United States, 6 Cir., 188 F.2d 536; Collier v. United States, 6 Cir., 190 F.2d 473, 477; Wilson v. United States, 6 Cir., 214 F.2d 313; Miller v. United States, 4 Cir., 261 F.2d 546, 547. We regard the contention that Brown was entitled to a directed verdict of acquittal as plainly frivolous.

It is contended that the testimony in the deposition of Mrs. Lottie Meyers as to Brown's statements tending to support his claim that he was asserting no rights of ownership of the car, was acknowledging that it was a rented car, and was intending to return it to the rental agency in Cedar Rapids, Iowa, should not have been excluded as hearsay and self-serving. The same contention is made with respect to similar testimony sought to be elicited from the witness Swedholm, which was objected to and excluded. Mr. Baldwin argues that while the

rejected evidence would not have been proof of the facts recited, it should have been received as bearing on the question of Brown's intent, saying in his brief: "The very essence of the Government's case is the intent of the appellant at the time of renting the car manifested by certain later actions, and yet the appellant is not allowed to show by what he told others the manifestation of his true intent." He cites, in support, the cases of United States v. Bucur, 7 Cir., 194 F.2d 297, 301–302, and United States v. Matot, 2 Cir., 146 F.2d 197, 198–199, which indicate that such evidence is not incompetent where the issue is intent or good faith. Matot was charged as an aider and abettor in the wilful misapplication of money of a bank. He denied any intent to defraud. In testifying in his own defense he was not allowed to testify about an interview had with the president of the bank in which Matot offered to sacrifice his real estate to protect the bank against loss. In granting Matot a new trial, Judge Learned Hand, speaking for the court, said (at pages 198–199 of 146 F.2d):

" * * * Although Matot's testimony was the only direct evidence upon his intent, it was not fair to confine him to a bare denial—never impressive in the mouth of the accused. He was entitled to corroborate that denial by any conduct which confirmed it. Had he called the president, the question would have been the same; yet it is hard to believe that anyone would maintain that there was so little probative connection between the offer and his original purpose, that no jury could infer the second from the first. The exclusion of evidence, which does not too much entangle the issues and confuse the jury, merely because of its logical remoteness from the issue, is always a hazard, and is usually undesirable. * * *"

In United States v. Bucur, supra (194 F.2d 297), in which Judge Lindley wrote the opinion, the defendant was charged with conspiring with others to transport

stolen cars in interstate commerce. He denied being a party to the conspiracy. Evidence to show that he had warned a witness named Bellanger to have nothing to do with an alleged co-conspirator, since the latter was not procuring the cars he was selling in a proper manner, was offered and excluded as self-serving. The court said (at pages 301, 302 of 194 F.2d):

> " * * * By his plea, defendant denied knowledge of the fact that the vehicles were stolen. Thereafter he was confronted with substantial affirmative proof to the contrary. In this situation, he had a right to attempt to meet and overcome this proof against him by evidence tending to establish his good faith. To be compelled to meet this challenge without the benefit of testimony concerning his conduct and statements, following what he contends was his initial ascertainment of the illegal scheme, seems to us manifestly wrong. If testimony of this nature is excluded by the legalistic tag of 'self-serving,' an anomalous situation is presented where the accused is faced with the need to bolster his claim of innocence but is deprived of the most logical means of doing so."

We cannot say that the issue of the admissibility of some of the evidence of the witnesses Meyers and Swedholm as to acts and statements of Brown about the car and his intentions with respect to it, which was excluded at the trial as hearsay and self-serving, is so *plainly frivolous* as to justify denying Brown leave to proceed on appeal in forma pauperis. Leave is granted.

The other issues raised appear to us to be frivolous, but they can better be disposed of by the division of the Court to which the case is finally submitted. Since the record already before us appears to be entirely adequate for purposes of review on the merits, we take the liberty of suggesting that counsel promptly file such additional typewritten briefs as they regard as necessary or desirable, and that they consider whether the appeal should not be submitted on briefs without further argument or be set down for argument on some day during the May session which is agreeable to counsel and the Court.