Henry Floyd BROWN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16210.

United States Court of Appeals
Eighth Circuit.

Nov. 4, 1960.

Edwin S. Baldwin, St. Louis, Mo., for appellant.

Frederick H. Mayer, Asst. U. S. Atty., St. Louis, Mo., for government.

Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

BLACKMUN, Circuit Judge.

This defendant, Henry Floyd Brown, upon a plea of not guilty, was convicted

by a jury of a violation in 1958 of that provision of the National Motor Vehicle Theft Act, commonly known as the Dyer Act, now found at 18 U.S.C. § 2312. The charge was transportation of a 1957 Ford automobile in interstate commerce from Iowa to Missouri knowing it to have been stolen. Brown promptly filed a notice of appeal and a motion for leave to proceed in forma pauperis. The District Court denied this motion and certified that the appeal was frivolous and not taken in good faith. The defendant then filed a similar motion here.

On April 26, 1960, this court held that the defense's contention that Brown was entitled to a directed verdict of acquittal was plainly frivolous but that its further contention that portions of the testimony of two witnesses, Mrs. Lottie Meyers and O'Neal H. Swedholm, was improperly excluded, as hearsay and self-serving, was not so plainly frivolous as to justify denying Brown leave to proceed on appeal in forma pauperis. Leave therefore was granted. Brown v. United States, 8 Cir., 277 F.2d 201, 204.[1]

As noted in that opinion, the government's evidence showed the rental of the automobile in question to Brown on May 28, 1958, by a car-rental agency at Cedar Rapids, Iowa; the representation by Brown that he wanted to use the car to go to Washington, Iowa, and would return it within 36 hours; his use of his own name and his display of his driver's license at the time of rental; his deposit of a $25 minimum and his signing a rental contract whereby he agreed not to remove the car from Iowa without the consent of the owner; his driving the car that very day to St. Louis, Missouri; his subsequent trips to Arkansas and Kansas City, Missouri; his arrest in St. Louis on June 20, 1958, with the car keys in his possession; the presence at that time of various stolen license plates in the car; the removal of the original Iowa plates

from the automobile and their replacement by a stolen Missouri plate; the absence of the Iowa registration certificate from the steering column; and a 6166 mile use of the car while it was in Brown's possession.

Two points are now raised by the defense: (1) that the trial court erred in excluding those portions of the testimony of the witnesses Meyers and Swedholm as to statements made by Brown to the effect that he never stated that he owned the car, that he was returning to Cedar Rapids, and that he came back to St. Louis because of trouble with the car, and (2) that the trial court erred in refusing to instruct the jury that the rebuttal evidence of witness Edmund W. Kadell was admissible only to impeach testimony of Brown's mother and did not constitute substantive evidence. We consider these in order:

1. *The excluded portion of the testimony of witnesses Meyers and Swedholm.* Lottie Meyers lived in St. Louis. Because of an infirmity she testified by deposition. She had a roomer named Stevenson at her house. Stevenson had asked her if Brown, who was his friend, could stay there. She assented. Brown did stay there for a night or two beginning May 28, 1958. Objections were interposed, upon the grounds of unresponsiveness, hearsay and their self-serving character, to answers by Meyers to the effect that Brown left her house and said he was going home; that "the boys said he got on his way, they took him to the city limits", that he came back that night and "said his car broke down when he got about ten miles from the city limits, and he wanted to know if he could sleep here that night"; that "he thought he was going home"; that when he left here "he said he was on his way home with the car he had rented"; and that he "told me his car broke down in Racine, and he said he rented a car and he had to get

1. This proceeding is not to be confused with another current charge against this same defendant and his conviction thereof and his similar efforts to pursue an appeal to this court in forma pauperis.

Brown v. United States, 8 Cir., 277 F. 2d 204, application for leave to file a petition for rehearing denied 8 Cir., 282 F.2d 621.

it back". The objections were sustained and an offer of proof was made. On separate occasions, during the attempted presentation of this evidence, the court indicated that certain of it "might be subsequently offered in substantiation but I am going to sustain the objection at this time", and that the ruling adverse to the defense was made "upon the ground that it is hearsay and self-serving and that at this stage of the record the defendant is not entitled to show it." Meyers was permitted to testify, "I thought he went home" and "the next day he was supposed to go home and he came back."

Witness Swedholm, who admitted three prior felony convictions including one under the Dyer Act and who appeared under subpoena, testified that he first met Brown on May 28, 1958, when he came to the Meyers house; that he, Stevenson and Brown left after dinner and drove in Brown's car, "the car he had rented", to the Cherokee Pub; and that he saw Brown on the following Saturday night. An objection was interposed to a question whether Brown had ever stated to him or to anyone in his presence that he owned the automobile and objections were also made to unresponsive answers reciting that Brown "was supposed to go back the next day" and that "he told me that he had had difficulty with the car". These objections were sustained and, to the extent answers had been given, the jury was instructed to disregard them. Here again the stated grounds for the objections were unresponsiveness, hearsay and self-serving character.

Brown then took the stand in his own behalf. He stated that he indicated at the rental office that he was going to West Union, Iowa; that he didn't recall saying anything about St. Louis because "I didn't think it was necessary"; that he came to St. Louis to see Stevenson so he could borrow "a few hundred dollars"; that he picked up his shaving kit and one shirt; that he drove north from Cedar Rapids to West Union, Iowa, to see his sister for about fifteen minutes and from there on the same day south to St. Louis; that he went to the Meyers house; that he told Mrs. Meyers during dinner that the car he had was rented and he had to return it in a day or so; that he told the same thing to Stevenson and Swedholm; that he was not able to borrow money from Stevenson; that he then decided he "might as well go on back home"; that he started home; that, however, he had trouble with his car and it reached the point "where I could hardly drive it"; that he stopped and took a cab back to the Meyers house where he spent the night; that the next morning he and Swedholm took the car to a garage where a mechanic fixed it; that after he had paid for this repair he realized he would not have enough money to pay the car rental when he got back home; that he then decided to stay in St. Louis and "figured I would meet someone else I did know and I would be able to borrow the money to take care of my obligations"; that he telephoned his mother in Cedar Rapids and told her about the car trouble and asked her to call the rental agency and to tell them that he would be back in a day or so; that he was confused by his financial problems; that he did not get in touch with other persons but spent "a bit of time trying to locate them"; that he went to Kansas City to find a friend to borrow money; that he didn't steal any of the license plates; that they were given to him and he put them in his car; that he removed the Iowa plates and put on the Missouri plate because he then remembered that he had violated his conditional release and the car would not be so noticeable without Iowa plates; that while he was in St. Louis he did not claim to any person that he was the owner of the car or offer or attempt to sell the car or state to anyone that he intended to keep the car; and that he made two trips to Arkansas and one to Kansas City and drove around "an awful lot here in St. Louis trying to locate some fellows" so he could borrow money.

On cross-examination Brown admitted that he had prior convictions (kidnap-

ping, the Dyer Act, assault and robbery); that before leaving Cedar Rapids he had written Stevenson and "they were expecting" him in St. Louis; that he intended to take the car out of Iowa at the time he rented it; that he did not inform the rental agency of that fact or arrange with them to take the car into Missouri or into Arkansas; that he knew the license plates were stolen; and that he did not want to be found outside Iowa. On re-direct examination he stated that when he rented the car he did not intend to take it to Arkansas; that it was his original intention to stay in St. Louis two days "at the very most"; and that he did not tell the agency that he intended to go to St. Louis because it would be a violation of his conditional release and because he thought it was unnecessary as long as they were paid.

The defense then re-offered the excluded portions of the Meyers deposition but did so on the theory that Brown's credibility had been attacked by the reference to his prior convictions and that this was corroborative and rebuttal material. No other ground for the re-offer was asserted. There was no recall of Swedholm.

The defense, stressing that "the very essence of the Government's case in proving Brown guilty * * * was his intent to convert the rented car to his own use and to deprive the owner of his rights and benefits of ownership prior to the time he drove the car from Iowa to Missouri", and citing United States v. Turley, 352 U.S. 407, 417, 77 S.Ct. 397, 1 L. Ed.2d 430, urges that "testimony regarding statements made by him tending to prove that he had no intent to steal the car in question are admissible in his behalf".

There is authority pointing in this direction. The defense calls our attention to Professor Wigmore's observation that a statement by an accused person is usable against him as an admission and the same writer's question, "Is there any reason why prior statements *in favor* of the accused * * * should not be equally admissible?" These and his supporting argument are cogently set forth in Wigmore on Evidence (Third Ed. 1940), Volume VI, § 1732. The defense also cites United States v. Matot, 2 Cir., 146 F.2d 197, and United States v. Bucur, 7 Cir., 194 F.2d 297, pertinent excerpts from each of which are set forth in our prior opinion at 277 F.2d 201, 203–204. Compare also Heindel v. United States, 6 Cir., 150 F.2d 493, 497 and United States v. Wicoff, 7 Cir., 187 F.2d 886, 890–891. On the other hand, as Wigmore himself acknowledges, cases where testimony of a defendant's statements have been excluded as self-serving are numerous.[2]

We are not persuaded, however, that *Matot* and *Bucur* and the statement of Professor Wigmore should control this case and compel a reversal here. The facts of *Matot* are not comparable to those before us. The defendant there was well able to pay his overdrafts which were the basis of a charge that he had abetted another in the wilful misapplication of a bank's money. The court stated its doubt of the defendant's guilt in "so close a case", [146 F.2d 198] and observed that "in a clearer case we might disregard the error". *Bucur* involved a conspiracy charge and the defendant's attempts to prove his severance from it. But there even the defendant was not permitted to testify as to his warning to a witness to have nothing to do with the alleged co-conspirator. The present case involves no conspiracy and the defendant here was permitted to testify at length and repeatedly as to his claimed intent and statements.

On the other hand, the evidence of this defendant's guilt is overwhelming. His representation to the rental agency

2. Examples are Busch v. United States, 8 Cir., 52 F.2d 79, 88, certiorari denied sub. nom. Greible v. United States, 284 U.S. 687, 52 S.Ct. 209, 76 L.Ed. 580; Shreve v. United States, 9 Cir., 103 F. 2d 796, 806, certiorari denied 308 U.S. 570, 60 S.Ct. 84, 84 L.Ed. 479; Piassick v. United States, 5 Cir., 253 F.2d 658, 661; McDonough v. United States, 10 Cir., 227 F.2d 402, 405.

that he would return within 36 hours; his admission that at the time he rented the car he intended to drive it to St. Louis; his readiness to sign a contract that he would not remove the automobile from Iowa without the owner's consent; his trip to Kansas City and his two trips to Arkansas without notice to the agency; his accumulation of extensive mileage; his possession of stolen plates; his removal of the Iowa plates and registration certificate; and his placing of a Missouri plate, knowing it to have been stolen, upon the car are all uncontroverted and admitted positive factors bearing upon his intent and most of them are chronologically near May 28, 1958. The jury obviously was not impressed with Brown's stated explanations for all this, and it is highly unlikely that they would be otherwise impressed by evidence from a confused feminine witness and from a companion, himself thrice convicted of felonies, of statements made to them, although within two days of his entering Missouri, as to his initial and continuing intent to return the car to the Cedar Rapids owner.

We have in mind, too, the defense's failure to produce other direct evidence, such as that of the mechanic who was said to have repaired the car and who could have shown its alleged non-operating condition; the difficult form of the Meyers testimony, almost incoherent in places and certainly subject to the government's repeated objections on the ground of unresponsiveness; and the failure of the defense, after Brown himself had testified, to recall Swedholm and to re-offer the Meyers testimony on proper grounds. While we might not disapprove an admission of this evidence when originally offered or on recall and proper re-offer, we are not prepared to say that its exclusion under the circumstances of this case was error.

We feel that this should remain primarily a matter for the proper exercise of discretion by the trial court in the light of the evidence as a whole and of the orderly development of the case. The Tenth Circuit has said, in Hayes v. United States, 10 Cir., 227 F.2d 540, 543:

"When acts of subsequent conduct are offered to prove absence of evil intent, the trial court is vested with considerable discretion in admitting or refusing to admit such evidence."

See also United States v. Stoehr, 3 Cir., 196 F.2d 276, 282, 33 A.L.R.2d 836, certiorari denied 344 U.S. 826, 73 S.Ct. 28, 97 L.Ed. 643, where the court approved the exclusion of an income tax fraud defendant's offer in compromise containing a statement of his desire to pay the government "every cent due it". We regard the trial court's rulings here as having been made in the proper exercise of its discretion.

2. *The use of the Kadell testimony.* Kadell, a special agent of the Federal Bureau of Investigation, was called by the government in rebuttal and testified as to his conversation with the defendant's mother who had already appeared as a defense witness. Mrs. Brown had testified that the defendant, who had been living with her, had recently wrecked his own car, had left her home on May 28, and had said that he would be back in a day or so; that on June 2 her son telephoned her from St. Louis and said he had had car trouble and would be home that night; and that he asked her to call the car rental agency and tell them so. On cross-examination she recalled being interviewed by Kadell but denied that the defendant told her of his having been in Arkansas and also denied that the defendant had asked her not to reveal his whereabouts. Kadell on rebuttal testified that on June 12 Mrs. Brown had told him that in her telephone conversation with her son he said that he had been in Arkansas and that he did not intend to return to Cedar Rapids and instructed her not to turn him in or furnish Stevenson's name or the St. Louis number to anyone.

The prosecution, in its initial closing argument to the jury made the following statement:

"Agent Kadell was brought back and you heard his statement, what Mrs. Brown, the mother of that defendant was told by this defendant, that he never intended to come back

to Cedar Rapids, that he wasn't bringing that car back to Cedar Rapids and not to tell anyone Stevenson's phone number or that he was in St. Louis because these people down here played pretty rough."

At the conclusion of this first argument the defense objected to that statement and asked that the jury be instructed to disregard it. The Court refused this request. After the jury had been instructed and had retired the defense orally asked for a cautionary instruction to the effect that the Kadell testimony was admitted solely for impeachment purposes and not as evidence against the accused.

■ These were the only objections made. Thus, no objection was made to the testimony itself; no request was made, while the witness was on the stand, for a precautionary statement to the jury; and no written request was made for an appropriate instruction as prescribed by Rule 30, F.R.Crim.Proc., 18 U.S.C.

As the defense contends, there is authority that testimony of this kind is admissible only for the purpose of impeachment and is not substantive evidence. Ellis v. United States, 8 Cir., 138 F.2d 612, 616–621 and cases cited; United States v. Rainwater, 8 Cir., 283 F.2d 386; Valentine v. United States, 5 Cir., 272 F.2d 777, 778; Slade v. United States, 5 Cir., 267 F.2d 834, 839; Bridges v. Wixon, 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103; N. L. R. B. v. Quest-Shon Mark B. Co., 2 Cir., 185 F.2d 285, 289, certiorari denied 342 U.S. 812, 72 S.Ct. 25, 96 L.Ed. 614. Compare Chicago, St. P., M. & O. Ry. Co. v. Kulp, 8 Cir., 102 F.2d 352, 358, 133 A.L. R. 1445, certiorari denied 307 U.S. 636, 59 S.Ct. 1032, 83 L.Ed. 1518.[3] In these cases, however, timely objections or requests were made. In Stansbury v. United States, 5 Cir., 219 F.2d 165, 167, cited by the defense, the court noted that objections were made, although belated,

and that, in any event, because of the nature of the collateral matters, the judge of his own motion should have told the jury not to consider them or should have limited the purpose for which some of the evidence was admitted. The court, however, went on to say, at page 168 of 219 F.2d:

"This conclusion is based in part on the fact that, as pointed out, the case in chief was not at all strong and the prejudicial matters hereafter set out may well have tilted the scales against appellant on the question of his guilt or innocence of the offenses charged."

■ After a careful review and consideration of the entire record, we also conclude that this second point raised by the defendant has no real merit. Some of the factual material as to which Kadell testified was already in the record and unchallenged. The defendant himself admitted having been in Arkansas and witness Swab, who ran the car rental agency, told of Mrs. Brown's telephone call to him. The critical part, of course, was the claimed statement that he did not intend to return; as to this we feel the ample other evidence compels the jury's conclusion as to the defendant's intent. This situation is not like *Stansbury*, where the "case in chief" was weak and the prejudicial matters "may well have tilted the scales." Furthermore, procedural rules are intended to have meaning and effect. The requirement of Rule 30, F.R.Crim.Proc., that no error may be assigned as to any portion of a charge or omission therefrom unless a proper objection is made before the jury retires is to be enforced in the interests of orderly criminal procedure. Page v. United States, 8 Cir., 282 F.2d 807; Mims v. United States, 9 Cir., 254 F.2d 654.

■ We state in summary—and without detracting in any manner from what we have heretofore said—that even if

---

3. For suggestions to the contrary see Wigmore on Evidence (Third Ed. 1940), Volume III, § 1018(b); the American Law Institute's Model Code of Evidence, Rule 503(b); McCormick, The Turncoat Witness: Previous Statements as Substantive Evidence, (1940) 25 Texas Law Review 573; Rule 63(1) of the Uniform Code of Evidence, Handbook of the National Conference of Commissioners on Uniform State Laws (1953).

there is error in this record, we are convinced that it is harmless error within the standard of Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557, and that under Rule 52(a) of the F.R.Crim.Proc. it is properly to be disregarded. What we said in Homan v. United States, 8 Cir., 279 F.2d 767, 771, is applicable here:

"Errors of the trial court which may be prejudicial in a close criminal case, in the sense of being capable in such a situation of possibly affecting the result, can well be without any such rational possibility in a strong case, and thus not entitle the defendant to a reversal of his conviction."

The Supreme Court said, in Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593, "A defendant is entitled to a fair trial but not a perfect one." This defendant has had his fair trial.

This court is again grateful to Mr. Edwin S. Baldwin of the St. Louis Bar for his able representation, at the court's appointment, of the defendant on the appeal in this case.

Affirmed.