**Maynard Allen JACOBSON, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 18009.**

United States Court of Appeals
Eighth Circuit.

March 8, 1966.

Craig A. Beck, Minneapolis, Minn. (Court-Appointed), for appellant.

Stanley H. Green, Asst. U. S. Atty., Minneapolis, Minn., Miles W. Lord, U. S. Atty., Minneapolis, Minn., for appellee.

Before MATTHES and GIBSON, Circuit Judges, and REGAN, District Judge.

REGAN, District Judge.

Maynard Allen Jacobson, also known as Maynard Allen Hedge, was convicted by a jury in the United States District Court, District of Minnesota, Fourth Division, for violation of § 2312, 18 U.S.C. The indictment charged appellant with the transportation of a 1960 Oldsmobile in interstate commerce from Iowa to Minnesota knowing it to have been stolen.

Appellant here contends that he is entitled to a new trial on the ground the trial court erred in refusing to exclude evidence allegedly obtained during a period of illegal detention. Appellant was arrested in California on a complaint and warrant issued in Minnesota charging him with the offense of which he was convicted. His complaint of illegal detention is based on irregularities in the proceedings resulting in appellant's removal to Minnesota prior to his indictment.

Appellant does not question the sufficiency of the evidence to sustain his conviction. A brief review of the evidence will place appellant's contention in proper perspective. On September 25, 1963, the 1960 Oldsmobile automobile was stolen from a used car dealer in Council Bluffs, Iowa, by a man identified as appellant by Donald Emerine, the salesman to whom appellant represented that he desired to take it for a test drive.

On December 18, 1963, this same 1960 Oldsmobile ran out of gas in the parking lot behind a filling station in Willmar, Minnesota. The driver was identified as appellant by David E. Garner, the filling station attendant.

This man was then observed in the automobile by Dale Peterson, a Willmar police officer. Peterson identified appellant as the man. The officer, who was on the lookout at the time for a blue 1960 Oldsmobile (the stolen car was blue), talked to appellant, asked for his driver's license and requested other information. While the officer was preparing to check out the information by radio, appellant asked for and received permission to use the restroom in the filling station. After coming out of the restroom, appellant stopped near the station attendant, and then suddenly fled. After appellant escaped, Peterson ascertained from Garner that a young woman (Carol Ann Doemer, then Anderson), had been with appellant, and that she was waiting for him across

the street in the showroom of an automobile dealer. Miss Anderson was then taken into custody. Appellant was not apprehended until October 31, 1964. He was transported to St. Paul, Minnesota, November 5, 1964.

Appellant, who presented no evidence, defended the charge by rigorously cross-examining all of the prosecution witnesses in an attempt to convince the jury the witnesses were mistaken in their identification. It is in this frame of reference that appellant's sole assignment of error must be considered. Prior to the trial he moved to suppress the testimony of Officer Peterson (whose name was then unknown to him). On November 10, 1964, Peterson had accompanied two other officers to the Hennepin County, Minnesota, jail, to question appellant concerning other crimes committed in Willmar.

The motion to suppress, which was denied without prejudice to renewing the same at the trial, was predicated on the theory that Peterson's professed reason for visiting the jail was not the real one, and that by observing appellant during his allegedly illegal detention prior to the return of the indictment, Officer Peterson was thereby enabled to make a positive identification of appellant at the subsequent trial as the man who had fled from him in December, 1963.[1]

When Peterson took the witness stand, appellant again objected to any testimony by the officer as to the identity of appellant. A hearing was held in the absence of the jury, at which Peterson testified positively that he was able to identify appellant as the same person he saw in Willmar on December 18, 1963 without regard to having seen appellant in the jail on November 10, 1964. The Court then overruled the motion to suppress, but limited the officer's testimony by excluding any reference to the so-called "jail-identification."

We find no error prejudicial to appellant in the Court's refusal to suppress the identification testimony of Officer Peterson. Payne v. United States, 111 U.S.App.D.C. 94, 294 F.2d 723, denied a similar contention under facts much more favorable to appellant's position than those here present. In *Payne,* the illegal detention resulted from an arrest unrelated to the offense of which Payne was convicted. The prosecution directly resulted from the identification which the victim made during and as the result of the illegal detention. But for that identification, the defendant would not have been charged, tried, and convicted. In holding that the testimony of the complaining witness was admissible, the Court stated,

> "The consequence of accepting appellant's contention in the present situation would be that Warren would be forever precluded from testifying against Payne in court, merely because he had complied with the request of the police that he come to police headquarters and had there identified Payne as the robber. Such a result is unthinkable. The suppression of the testimony of the complaining witness is not the right way to control the conduct of the police, or to advance the administration of justice. The rights of the accused in a case like the present are adequately protected when the complaining witness takes the stand in open court, for examination and cross-examination."

In Smith v. United States, 117 U.S. App.D.C. 1, 324 F.2d 879, the identity of an eyewitness to the crime was unknown to the prosecution until it was revealed by the defendant, during the period of his illegal detention. Yet the court rejected the "fruit of the poisonous tree" argument which is advanced in this case. Here, not only was the identity of Peter-

---

[1] The confrontation in jail might well have proved beneficial to appellant. Conceivably, the personal view might have convinced Peterson that appellant was not the man he saw on December 18, 1963. Payne v. United States, 111 U.S.App. D.C. 94, 294 F.2d 723, 727.

son not disclosed by appellant either during the allegedly illegal detention or at any other time, but he was known to the government prior to appellant's arrest and detention. In fact, it was his identification of appellant at a much earlier date which helped bring about appellant's arrest and prosecution. The testimony Peterson gave was in no way related to appellant's detention. The value of that testimony depended on what he saw and observed on December 18, 1963, not on anything appellant said or did in the Hennepin County Jail.

In *Payne*, the court distinguished its earlier decision in Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465 (relied upon by appellant in the instant case), which "held that fingerprints of the accused taken during a period of illegal detention should be excluded from evidence, and indicated that anything of 'evidentiary value' produced by such detention should be proscribed." The court pointed out that subsequently it affirmed Bynum's conviction after a second trial, in which a fingerprint other than that taken during the period of illegal detention was admitted into evidence, although this fingerprint was obtained only because the prosecutor knew of Bynum's identity as a result of the fingerprints taken during that period. Bynum v. United States, 107 U.S.App.D.C. 109, 274 F.2d 767.

In both *Payne* and *Smith*, the detention may well be said to have produced the vital identification of defendant as the culprit. No such situation is here present. Appellant's contention that Peterson would not have been able to make a positive identification of appellant but for the fact that he viewed appellant on November 10, 1964 is purely speculative. It is based on the theory that by viewing appellant in the Hennepin County Jail, Peterson was necessarily able to and did refresh his recollection of appellant's appearance, which "may have clouded during the interim" since December 18, 1963. Appellant's argument is contrary to the sworn testimony of the witness when interrogated in the absence of the jury prior to his appearance on the stand.

Nothing in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, or Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, supports appellant's contention. *McNabb* held inadmissible a confession obtained during the defendant's illegal detention. So, too, *Mallory* held that a conviction could not be based on a confession made during the period of defendant's detention in violation of Rule 5(a) of the Federal Rules of Criminal Procedure.

The case of United States v. Klapholz, 2 Cir., 230 F.2d 494, cited by appellant is clearly distinguishable. There, the Court held that all evidence obtained in the defendant's home while illegally detained in violation of Rule 5(a) should be suppressed, the exclusionary rule not being limited to confessions. Significantly, the Court held that the district court "rightly refused to suppress evidence obtained prior to that date and hour."

In this case, no evidence, if any, which was secured during the period of appellant's detention in the Hennepin County Jail was admitted. The trial court carefully limited the testimony of Peterson, so that the prosecution was not permitted to make reference to Peterson's view of appellant in the jail. We hold that the testimony of Officer Peterson identifying appellant as the person he saw in the stolen automobile in Willmar, Minnesota on December 18, 1963, was admissible. "[L]awfully obtained evidence is not interdicted." Sutton v. United States, 4 Cir., 267 F.2d 271, 273.

Thus far we have assumed arguendo that the procedural irregularities resulting in appellant's removal to Minnesota and his detention thereafter in the Hennepin County Jail would entitle appellant to complain that his removal and detention were illegal, at least prior to the return of the indictment.

The facts relied on by appellant may be summarized as follows: Defendant was

apprehended in San Francisco, California on October 31, 1964. Thereafter, on November 2, 1964, he was brought before the United States District Court for the Northern District of California, Southern Division, ostensibly for a Rule 20 disposition of the charge against him. The transcript of the hearing held on that date shows that after the district judge expressed doubt as to the wisdom of accepting a Rule 20 plea, he appointed counsel to advise and confer with defendant. After this conference was held, the Court inquired whether appellant wished to be removed to Minnesota. The transcript then shows the following colloquy:

"The Court: Have you been able to talk to this man in sufficient detail?

Mr. McCarthy: (appellant's court-appointed counsel) Yes, Your Honor. I believe the indictment was returned in Minnesota and *the defendant would request that he be returned there for proceedings.*

Mr. Urdan: (assistant district attorney) Well, I will ask that the defendant, then, Your Honor, be remanded to custody of the marshal for purposes of being removed to Minnesota.

The Court: For transportation.

Mr. Urdan: Right.

The Court: You will be on your way very shortly.

Defendant: O. K. Thank you."

Appellant was transported from California to Minnesota on November 5, 1964. On November 9, 1964, appellant appeared in the United States District Court in Minnesota at which time Mr. Craig A. Beck was appointed by the court as attorney for appellant. Thereafter, on November 18, 1964, the indictment on which appellant was tried was returned by the grand jury. It is appellant's position that the failure to accord appellant a Rule 40(b) hearing in California operated to make his removal and detention, prior to his indictment, illegal, there being no written waiver of such hearing.

■ It is undisputed that no Rule 40 (b) hearing was held, and it is equally clear that the provisions of Rule 20 were not complied with. However, in our opinion, the transcript of the proceedings in California demonstrate that the removal order was entered at the request of counsel for appellant and was acquiesced in by appellant himself. The removal order itself so shows. In this state of the record, the irregularities in the removal proceedings, occasioned as they were by the acquiescence, if not the request, of appellant are not such as to make illegal either his removal or his detention in the Hennepin County Jail at the time he was viewed by Officer Peterson. True, the attorney was mistaken in stating that an indictment had been returned in Minnesota, but it is obvious he was referring to the complaint and warrant which charged appellant with a violation of § 2312, 18 U.S.C.

The Court did not err in overruling appellant's motion to suppress the identification testimony of Officer Peterson and in refusing to exclude this testimony.

■ On the merits, this is not a close case. The evidence of appellant's guilt is clear and convincing. As we have noted, in addition to Peterson's testimony, appellant was identified by the car salesman in Council Bluffs, Iowa, from whom he obtained the automobile, by the filling station attendant in Willmar, Minnesota, who saw and talked to appellant, and by Carol Ann Doemer who traveled with appellant in the stolen automobile for about two months and was with him in Willmar at journey's end.

"The strength of the case made out by the Government is an important factor entitled to consideration in appraising the probable effect of the asserted error." Evenson v. United States, 8 Cir., 316 F.2d 94, 96. The applicable rule has been well stated in Brown v. United States, 8 Cir., 283 F.2d 792, 797.

"We state in summary—and without detracting in any manner from what we have heretofore said—that even if there is error in this record,

we are convinced that it is harmless error within the standard of Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557, and that under Rule 52(a) of the F.R.Crim.Proc. it is properly to be disregarded. * * *

"The Supreme Court said, in Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593, 'A defendant is entitled to a fair trial but not a perfect one'".

Appellant received a fair trial on a valid indictment. He was well represented by capable, conscientious counsel. We are convinced not only of the absence of error, but also that appellant suffered no prejudice as a result of the ruling of which he complains.

The judgment appealed from is affirmed.