Genelle **WEATHERSBEE** and Esther B.
Ram, Appellants,

v.

**UNITED STATES** of America,
Appellee.

No. 7732.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 24, 1958.

Decided Dec. 22, 1958.

Lonnie A. Garvin, Aiken, S. C. (Garvin, Williamson & Grant, Aiken, S. C., on the brief), for appellants.

Frank H. Cormany, Sr., Asst. U. S. Atty., Aiken, S. C. (N. Welch Morrisette, Jr., U. S. Atty., Columbia, S. C., on the brief), for appellee.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and BRYAN, District Judge.

SOBELOFF, Chief Judge.

This appeal is from a judgment entered by the United States District Court for the Eastern District of South Carolina against Genelle Weathersbee and Esther B. Ram, individually and severally, for $1575.00 plus interest and court costs, in lieu of their returning to the United States one 1956 Model 2-Door Ford Victoria automobile. Federal officers had seized the vehicle pursuant to Title 26, U.S.C.A. §§ 7301, 7302, and 7321, on the claim that it was used in the transportation of illegal whiskey. When a bond was posted by Mrs. Weathersbee as principal and Mrs. Ram as surety, the car had been released to them.

It is appellants' contention that the District Court erred in denying their motion for nonsuit made at the close of the Government's testimony and in granting the Government's motion for a directed verdict made at the end of all of the evidence. The appellants maintain that the evidence failed to prove, as alleged in the libel, that (1) the Ford car was used as a lookout or convoy in the movement of non-tax-paid whiskey, and that (2) the car was legally seized.

### 1. Was the Ford a convoy car?

The non-tax-paid whiskey, the movement of which subjected the 1956 Ford to forfeiture, was carried from Berkeley County, South Carolina, to Aiken, South Carolina, in a 1946 Plymouth driven by a man who had been hired by the owners of the whiskey. The selection was an unfortunate one for the owners because the driver later proved to be an undercover informer for federal and state officers who were then conducting an extensive investigation into the illegal whiskey traffic in the area. Before making the trip, the informer advised the officers of the route over which the whiskey was to be moved and arranged to meet them along the highway so that they might view the cargo.

In these circumstances, contend the appellants, the movement of the whiskey was really under the direction and control of the officers, and therefore, the Ford could not possibly have been acting as a convoy or pilot car. This argument, however, overlooks the fact that even though the driver of the Plymouth was in co-operation with the government agents and in receipt of government pay, he followed the instructions of the owners of the whiskey. They designated the route over which the whiskey was transported, and it was delivered to places indicated by them.

When the movement of the whiskey began, the owners instructed the Plymouth's driver to follow the Ford which they were driving, so that they could lead him through the small towns "to keep the law off." The cars proceeded in this manner until they approached the point where the officers were waiting. The driver of the Plymouth then slowed down, allowing the Ford to proceed out of sight, in order to stop briefly without exciting the owners' suspicions. After the officers looked at the load of whiskey, the driver resumed his journey to Aiken where he was to make delivery to the owners. Before reaching Aiken, however, the car ran out of gas, and a passerby took the driver into town where he reported his predicament to one of the men who had employed him to transport the whiskey. The Ford was then used to bring gas to the stranded Plymouth and to push it in an effort to get it started. The above described activities were, we think, clearly sufficient to make the Ford a convoy car. Precisely in point is our recent decision in United States v. One 1957 Ford 2-Door Sedan, Serial No. D7 NV-106275, 4 Cir., 1958, 262 F.2d 651.

We have here no suggestion of entrapment. The fact that through the officers' adroitness or the violators' lack of caution, the former were able to detect the plan to move the illegal whiskey and could have prevented its successful completion, does not make its execution any less a crime. There is no reason to immunize violators or their equipment from

the consequences of illegal conduct simply because a law enforcement agency has been able to infiltrate the criminal group. If those who plan to move illegal whiskey hope to avoid detection and forfeiture of the vehicles used by them, they will have to be more circumspect in the selection of their collaborators.

## 2. Did the circumstances of the seizure vitiate the forfeiture?

When an automobile is used in violation of the Internal Revenue Laws, it becomes legally forfeited at that time, even though it is not seized until later. Property rights in the vehicle, including the right of possession, become vested in the United States, DeBonis v. United States, D.C.W.D.Pa.1952, 103 F.Supp. 123, Harman v. United States, 4 Cir., 1952, 199 F.2d 34, and all that remains is for the property to be seized and for the District Court to confirm the Government's title in a condemnation proceeding. However, the appellants assert that in this case the federal officers obtained possession of the forfeited property as a result of an illegal search and seizure violative of rights protected by the Fourth Amendment, and that such a seizure vitiates the forfeiture and requires the return of the property to its owner.

The transportation which caused the Ford car to be forfeited to the United States occurred on January 15, 1957. The officers decided not to seize the Ford and the Plymouth used in this enterprise or to make any arrests then, in order to maintain the secrecy of the extensive undercover investigation they were conducting in the Aiken area. The officers believed that the Ford belonged to Cecil Reese, one of the owners of the illegal whiskey, who drove it the night of January 15, 1957, and in whose possession it was seen both before and shortly thereafter. However, the car was registered in the name of a D. C. Weathers, whose existence has never been definitely established but who is asserted to be Reese's sister-in-law.

On April 20, 1957, state and federal officers began a mass seizure of vehicles involved in illegal operations discovered during the months of the undercover investigation. In the interval, the officers saw the Ford several times, but when they began the seizures they did not know its exact location. They started for the home of Cecil Reese to seize the 1946 Plymouth which carried the whiskey. On the way they passed the home of Charles Weathersbee, Reese's son-in-law, and in Weathersbee's front yard they saw the 1956 Ford. The officers stopped and one of them entered the yard, identified himself, and announced that he was seizing the Ford because it had been used to violate the Internal Revenue Laws. The officers had no search warrant.

Certain facts surrounding this seizure are remarkably similar to those in United States v. One 1956 Ford Tudor Sedan, 4 Cir., 1958, 253 F.2d 725, 727, where the automobile was seized over two months after the violation of the revenue laws, and there also the officers acted without a warrant. In answer to the contention that condemnation proceedings could not be maintained, Judge Haynsworth, speaking for this Court, said:

> "Legal infirmities in the seizure do not impair the right of the United States to condemn or clothe the former owner with property and possessory rights he lost when he used the property in violation of the revenue laws. Considerations which, in criminal cases, require the suppression of evidence obtained in an unlawful search and seizure have no application here."

This holding is in line with the Supreme Court's decisions in Trupiano v. United States, 1948, 334 U.S. 699, 710, 68 S.Ct. 1229, 92 L.Ed. 1663, and United States v. Jeffers, 1951, 342 U.S. 48, 54, 72 S.Ct. 93, 96 L.Ed. 59, that while property seized as a result of an illegal search and seizure could not be introduced as evidence in the criminal prosecution of its owner, it was still contraband and the owner was not entitled to have it returned to him. In Welsh v. United States, 1955, 95 U.S.App.D.C. 93, 220 F.2d 200,

the Court of Appeals for the District of Columbia Circuit, citing Trupiano and Jeffers, likewise held that illegally seized property need not be returned to the owner when it is contraband or *forfeitable*.

The appellants argue, however, that in this case the rule should be held inapplicable. They say that the premises of an innocent purchaser for value, Mrs. Weathersbee, were invaded, her husband physically abused, and her neighbor threatened; and that to protect the innocent from overzealous police, property taken in this manner should not be subject to forfeiture.

### (a) Property rights in the vehicle:

On the date of the seizure, April 20, 1957, the Ford was registered in the name of Mrs. Weathersbee, having been conveyed to her by her father, Cecil Reese, the preceding February, shortly after it had been involved in the movement of the illegal whiskey.

Considerable mystery surrounds the transfer of the Ford to Mrs. Weathersbee, and we are far from convinced that she was an innocent purchaser for value. It is almost impossible to believe that Mrs. Weathersbee had no knowledge of her father's activities in the traffic of illegal whiskey. She was living with her parents in 1947 when her father was convicted for a similar violation and served about seventeen months in the penitentiary. He was a known moonshiner and bootlegger. Furthermore, Mrs. Weathersbee claims that her aunt, D. C. Weathers, in whose name, as we have seen, the Ford was registered, was almost unknown to her and had not been in the vicinity for several years. It is difficult to understand the process whereby a car registered in another's name was conveyed to Mrs. Weathersbee by her father. However, the District Court made no finding as to this, and we need not decide it here.

Even if we assume that Mrs. Weathersbee was an innocent purchaser for value, we do not think that the forfeiture would be vitiated by the manner of the car's seizure. Since the property

rights in the automobile had passed to the United States, there was nothing left which Mr. Reese could have conveyed to his daughter, and the government had the right to take possession of the Ford. United States v. One 1954 Model Ford Victoria Auto., D.C.E.D.N.C.1955, 135 F. Supp. 809.

### (b) The alleged illegal search and seizure:

Furthermore, the record here discloses no search in the sense of going through the premises in an attempt to uncover hidden evidence. The automobile in question was visible to the officers from the road. No search of the claimant's premises was necessary nor was one made. The officer simply demanded the car which had been used in violation of the revenue laws and thereby had become forfeited to the United States, and asked for its keys. In such circumstances, where there was no need to search and the right to the property had passed to the United States by forfeiture, the Court of Appeals for the Fifth Circuit, in Sanders v. United States, 1953, 201 F. 2d 158, 159, declared:

> "The seizure of property, the title to which has been forfeited to the United States, is to be distinguished from the exclusion of evidence secured through an unlawful search and seizure. * * * In the one case the government is entitled to the possession of the property; in the other it is not. There is no constitutional objection to the enforcement by the courts of the forfeiture of an offending article. The Fourth Amendment does not guarantee against seizures in a proceeding such as this, * * * *"

There is conflict in the testimony as to exactly what took place after the officer announced his purpose. It is clear that both Mr. and Mrs. Weathersbee attempted to resist the seizure of the Ford. There followed an altercation between Mr. Weathersbee and the federal officer, and an argument between the officer and a neighbor to whose house Mrs. Weath-

ersbee went with the car key. However, it appears that the struggle with the officer occurred only as a result of Mr. Weathersbee's attempt to remove from the Ford and smash a bottle which apparently contained illegal whiskey.

While we are convinced that the seizure here in question was not illegal, we do not sanction a practice of federal officers entering without a warrant upon land belonging to one not involved in the violation of the revenue laws, to seize an automobile which has been forfeited to the United States. Such conduct is liable to result in disorder and violence, and it would be far better to avoid this by obtaining search warrants, as authorized by Title 18, Chapter 205. But the decided cases indicate that property seized in the manner shown is still subject to condemnation.

Affirmed.