**UNITED STATES of America,**
**Appellee,**

v.

**Vernon George CHRISTIAN, Appellant.**
**No. 20059.**

United States Court of Appeals,
Eighth Circuit.

June 24, 1970.

LeRoy Autrey, Texarkana, Ark., for appellant and filed brief.

James A. Gutensohn, Asst. U. S. Atty., Fort Smith, Ark., for appellee, Bethel B. Larey, U. S. Atty., was on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MEHAFFY and LAY, Circuit Judges.

MEHAFFY, Circuit Judge.

Vernon George Christian, the defendant, was convicted by a jury for having transported in interstate commerce a stolen motor vehicle knowing the same to have been stolen, in violation of 18 U.S.C. § 2312. As a result of said conviction, the court sentenced defendant to the custody of the Attorney General for imprisonment for a period of three years pursuant to the provisions of 18 U.S.C. § 4208(a) (2), making him eligible for parole at such time as the board of parole may determine. We affirm the judgment of conviction.

On this appeal defendant has obviously abandoned the issue of the sufficiency of the evidence raised at the conclusion of the trial, and asserts only that error flowed from the testimony of an FBI agent, who, in relating a statement made to him by defendant on the day following the latter's apprehension, included the sentence "that he had been released from a Federal Correctional Institution at Texarkana, Texas," and that this error was compounded by a statement made by the government attorney in his closing argument, "I don't know where he [defendant] is from. I know where he has been."

We note at the outset that no objection was made to the testimony of the FBI agent during the course of the trial; that this statement was taken after all proper warnings on the day following defendant's apprehension which was two days after the automobile was stolen in Houston, Texas; that prior to trial a copy of the agent's statement was furnished counsel for defendant and there was no suggestion that the objectionable sentence be deleted; that no objection was made to the agent's testimony; and that the sentence in the government attorney's closing argument was taken completely out of context and, as will be demonstrated by a more complete excerpt from this closing argument, it could not have reasonably been construed by any member of the jury as alluding to defendant's former incarceration for some dereliction or crime not involved in the instant case.

A recitation of the pertinent facts is in order. Mrs. Joella Stilley, a widow employed as a secretary by an oil company with offices in the First City National Bank Building in Houston, Texas, parked her 1965 Chevrolet on February 11, 1969 in an eleven-story commercial parking garage cater-cornered from the bank building. It was raining that day and she left her car in the commercial parking garage to be washed. This location permitted her to walk through the tunnel under the street to her office in the bank building proper. She left her car at 8:00 a. m. and when she returned for it at 5:00 p. m. that day, her car was missing and she reported it as stolen. About 3:45 a. m. on the following morning, February 12, 1969, defendant and one passenger, later ascertained to be Herman Garland Campbell, were observed under suspicious circumstances by the assistant police chief and another police officer in Prescott, Arkansas. The car was parked at the Broadway Hotel and one of the occupants had gone inside for a cup of coffee. The police kept the car under surveillance and when the driver made a U turn in the middle of the highway he was stopped. Defendant was driving the car but had no record of ownership. He did have a Missouri driver's license but the stolen car had a

Texas license plate on it. The occupants were requested to follow the police officers to the jail, and when defendant arrived his passenger was missing, having bailed out en route to the jail. Defendant told the officers the automobile was "hot."

Defendant had met Campbell in a Texarkana bus station and Campbell was en route to Fort Worth, but defendant claimed to be looking for a girl friend near Prescott and Campbell agreed to show him the way in return for defendant's thereafter taking Campbell to his destination in Fort Worth.

When defendant arrived at the jail without Campbell, the gasoline tank in the stolen car was virtually empty and defendant had no money. By 10:00 or 11:00 that morning, the officers had learned that the car had been stolen in Houston. In his statement defendant said that he had obtained the car from T. C. Gladwell, a salesman for Richardson Chevrolet Company in Houston, Texas. He claimed to have told Gladwell that he wanted to purchase an older model car and did not think he could afford this particular car but would try to arrange for the money. He was purportedly permitted to take the car on a trial basis and test drive it on the pretense of buying it. He said he told Gladwell that he wanted to take the automobile to his girl friend's home and would return it at approximately 8:00 o'clock the following morning, but did not tell him that he was going to take it to Arkansas. No evidence was offered by defendant or in his behalf at the trial, but at the time he made his statements to the arresting officers and the FBI agent as set out above he said that they would be verified through Gladwell, the aforementioned salesman for the Richardson Chevrolet Company in Houston.

Investigation reflected that the Richardson Chevrolet Company was located in the southwest edge of Houston, some twelve to fifteen miles from the parking garage from which the car was stolen. The State of Texas requires the licensing of all automobile salesmen and no one by the name of T. C. Gladwell was ever issued a license to sell automobiles in Texas. Furthermore, the Richardson Chevrolet Company checked its records back to 1960, and there was no T. C. Gladwell ever employed by the company during that period. Based on such undisputed evidence, the jury returned its verdict of conviction.

*Testimony Relating to the Texarkana Correctional Institution.*

■■ It, of course, is improper and constitutes error to admit evidence of a crime unrelated in any particular to the one with which defendant was here charged. This is sound and elementary law for the defendant's protection, and under similar but distinguishable circumstances some courts have held that reversal was required.[1] The FBI agent, of course, should not have mentioned the institution. He was not a lawyer, but as an FBI agent he should have known better. His testimony in this regard was not responsive but was given in reply to the government attorney's query: "What statement, if any, did Mr. Christian make with reference to the possession of the motor vehicle?" The FBI agent then related in substance the entire statement, including the fact that defendant told him that he had been released from the Federal Correctional Institution at Texarkana, Texas.

This statement could have been prevented by defendant's attorney's suggesting prior to trial that no reference be made to that aspect of the statement, or counsel could have objected at the time the agent testified in this regard and his objection would certainly have been sustained and a cautionary instruction given which would have cured any possible error. See McBride v. United States, 409

1. United States v. Bozza, 365 F.2d 206, 218 (2nd Cir. 1966); Sumrall v. United States, 360 F.2d 311, 314 (10th Cir. 1966); Tallo v. United States, 344 F.2d 467, 468 (1st Cir. 1965).

F.2d 1046, 1048 (10th Cir. 1969); United States v. Phillips, 375 F.2d 75, 81 (7th Cir. 1967); United States v. Hall, 342 F.2d 849, 854 (4th Cir. 1965). We do not, however, fault defendant's attorney on either point because he suggests, and with logic, that any objection he might have made during the trial would have emphasized this portion of the statement and might well have been more harmful. This is so as it was a mere passing statement included in the overall fanciful version of defendant's explanation of his possession of the car. Counsel for defendant did at the conclusion of the government's case move for mistrial and directed verdict on both the grounds of insufficiency of the evidence and because of the reference made in testimony to the defendant's having been in the Federal Correctional Institution.

A similar situation arose in United States v. Dillinger, 341 F.2d 696 (4th Cir. 1965), where the FBI agent who arrested the defendant testified that defendant told him that his friend, Fry, whom defendant had met in the Atlanta Penitentiary, came to Dayton, Ohio, after which they began their journey which resulted in the prosecution for violation of the Dyer Act. It was urged by the defendant that this statement was reversible error, but the court said at pages 698–699:

> "There was no objection at the time of the reference to the Atlanta penitentiary, but appellate counsel now suggests that we ought to notice the court's disregard of it as plain error. We think not.

> "The reference to the Atlanta penitentiary was of such a passing nature, and so apparently inadvertent, that it ought not to occasion the necessity of a new trial. Nothing else occurred in the trial to call attention to the reference or to highlight it in any way. It was the kind of thing that more than likely went unnoticed by the jury as it did by the court.

> "It has frequently been held that a new trial was not required by similar statements by a witness so long as they

appeared to have been incidental and inadvertent. Indeed, in Means v. United States, 62 App.D.C. 118, 65 F.2d 206, the Court dealt with almost the precise reference, the witness quoting the defendant as referring to a man whom he had met in the Atlanta penitentiary."

Fed.R.Crim.P. 52(a), 18 U.S.C., provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Also, 28 U.S.C. § 2111 states:

> "On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."

In Gresham v. United States, 374 F.2d 389 (8th Cir. 1967), we said that the courts have uniformly held that prejudicial error must be shown before a reversal is justified and that the strength of the government's case is an important factor in determining the existence of prejudicial error, citing numerous cases.

In Evenson v. United States, 316 F.2d 94, 96 (8th Cir. 1963), we said:

> "The strength of the case made out by the Government is an important factor entitled to consideration in appraising the probable effect of the asserted error. (Citing cases.)

> "The Supreme Court in Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 1247–1248, 90 L.Ed. 1557, in stating the test for judging prejudicial error, among other things, stated:

> " 'If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand * * *. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather even so, whether the error itself had substantial influence. If so, or if one is left in

grave doubt, the conviction cannot stand.'

"When consideration is given to the strong case made out by the Government, the rather brief, unemphasized reference to appellant's admission of his past record, the prompt and decisive action of the trial court in striking the evidence, and instructing the jury to disregard it, the trial court's appraisal to the effect upon the jury as reflected by his denial of the mistrial motion, and the record as a whole, we feel that we can say with reasonable assurance that the apparently inadvertent reference to appellant's past record did not have any substantial effect upon the jury's verdict."

It is true that the statement in this case was not ordered stricken, but defendant did not request it and later refused a proffered instruction on the matter.

In Frohmann v. United States, 380 F.2d 832, 834–835 (8th Cir. 1967), Judge Blackmun, speaking for this court, said:

"We decide this issue against the defendant and do so because we perceive no prejudice. * * * Furthermore, our decision is fortified by the failure of the defense to proffer a curative instruction when the court offered to give one if it were desired, and by our awareness that the allowance of a mistrial motion is a matter for the trial court's discretion. (Citing cases.) Certainly we do not find here the 'clear and obvious abuse of a trial court's discretion' which alone justifies reversal. (Citing case.)"

See also Lyda v. United States, 321 F.2d 788, 791 (9th Cir. 1963), where the court held that any error in the admission of similar testimony by an FBI agent was waived by the defendant by his failure to object.

In order to resolve the possible prejudicial effect of this portion of the statement, we have carefully canvassed the entire record and transcript, and are convinced that no prejudice resulted in any wise affecting the verdict of the jury.

The evidence of defendant's guilt is strong, clear and convincing beyond question. The stories related by the defendant to the police officers at Prescott and the FBI agent were obviously specious. At defendant's counsel's request the government made an extensive investigation in Houston and no such person as the alleged Gladwell ever worked for Richardson Chevrolet Company in Houston, or in fact was ever licensed to sell automobiles in Texas, and no such person could be located in the City of Houston. Furthermore, Herman Campbell who accompanied defendant, having met him in Texarkana only a short time before, testified that when they were apprehended by the Prescott police officers defendant told Campbell that the car was "hot as hell," and he responded by saying, "this is where I get out," and he "bailed out." Campbell was later picked up by the police, and when they found that he had been in jail at Russellville, Arkansas when the car was stolen he was released.

The courts of today have been especially zealous in protecting a defendant's every right, but it has never been the function of a reviewing court to reverse a criminal trial verdict unless some error was committed of a prejudicial nature. Such is not the case here. The evidence of guilt is strong and compelling, and we are thoroughly convinced that a reversal would be an exercise in futility because of the overwhelming evidence of defendant's guilt. Even if defendant's incredible story is believed in toto, it in itself is an admission of a violation of the Dyer Act, as the defendant obtained the car by fraud and misrepresentation with the specific intent of driving it to another state. He did not even tell the mysterious Mr. Gladwell that his intent was at all times to take the car to a foreign state. See United States v. Bruton, 414 F.2d 905 (8th Cir. 1969), and cases cited therein. It is not an infrequent occurrence for errors to creep into a criminal trial, but it is not every such error that would justify a reviewing court in ordering a new trial. The object of a trial, of

course, is to determine defendant's guilt or innocence, and while we do not have to strain to find error in this one aspect of the FBI agent's testimony, we cannot construe it as prejudicial in the light of the entire trial record. It was an inadvertence that could have been avoided by the defendant's attorney, or could have been brought to the attention of the court with a request for a cautionary instruction which would have cured any possibility of error. As it was, the instructions of the court were ample and no objection was made to them, and they did provide that the jury should not consider any evidence of any other crime in resolution of its verdict. The court specifically instructed the jury that "the defendant is not on trial for any act or conduct not alleged in the indictment," and the defendant declined an invitation by the court to request any additional instructions.

In Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953), the Supreme Court said:

> "In view of the fact that this record fairly shrieks the guilt of the parties, we cannot conceive how this one admission could have possibly influenced this jury to reach an improper verdict. A defendant is entitled to a fair trial but not a perfect one. This is a proper case for the application of Rule 52(a) of the Federal Rules of Criminal Procedure. We hold that the error was harmless."

See also Jacobson v. United States, 356 F.2d 685, 689-690 (8th Cir. 1966).

Cases of this type must be decided on a case-by-case basis, and we hold that the reference of the FBI agent to defendant's statement that he had been released from the Federal Correctional Institution was not reversible error under the particular circumstances of this case.

*The Closing Argument.*

 There is no merit whatsoever to defendant's argument that the government attorney made any statement which would call attention to the FBI agent's testimony relative to the Correctional Institution. The sentence relied upon was taken completely out of context as the government attorney was arguing that defendant had been in Houston. The following is the statement of the government attorney:

> "I don't know where he is from. I know where he has been. Down there in Houston with a man with a 1965 Chevrolet and says buy this, take it, take it until tomorrow, but just bring it back; just bring it back to where. Bring it back to the city of Houston, Texas, and put it there."

Aside from the one statement by the FBI agent, the record is completely free of error. Government counsel was an experienced, ethical and competent prosecutor. Defendant was represented by an equally experienced competent and ethical attorney. Both attorneys vigorously, but with consummate fairness, presented their positions. The learned trial judge, The Honorable Paul X Williams, known for his compassion, seemed to lean over backwards to insure that defendant's every right was protected. At the sentence hearing the court let the defendant's newly wedded wife plead in defendant's behalf, heard from defendant and also his attorney, and despite a criminal record that would have justified the maximum sentence, the court sentenced defendant pursuant to the provisions of 18 U.S.C. § 4208(a) (2) so that he will be immediately eligible for parole at any time the penal authorities feel that he deserves parole. Apparently the court was much impressed with the defendant's wife, who married him after this charge was brought, and was most hopeful that her influence will bring about a new life for this defendant once he has convinced the authorities he is entitled to have another chance.

A review of the entire record convinces us that the defendant had a fair trial and that the record is devoid of any prejudicial error which would entitle him to a reversal. Kotteakos v. United States, *supra*, 328 U.S. at 764-765, 66

S.Ct. 1239; Babb v. United States, 351 F.2d 863 (8th Cir. 1965); Evenson v. United States, *supra*, 316 F.2d at 97; Homan v. United States, 279 F.2d 767, 776 (8th Cir. 1960), cert. denied, 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88 (1960).

The judgment of conviction is affirmed.