**Betty McCONKEY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 20343.**

United States Court of Appeals,
Eighth Circuit.

June 23, 1971.

R. Walter Bachman, Jr., Minneapolis, Minn., for appellant.

J. Earl Cudd, Asst. U. S. Atty., Minneapolis, Minn., Robert G. Renner, U. S. Atty. for Dist. of Minn., for appellee.

Before JOHNSEN, VOGEL and ROSS, Circuit Judges.

PER CURIAM.

Appellant, a Miss Betty McConkey, was convicted on a jury trial of three violations of the federal wire fraud statute, 18 U.S.C. § 1343, and was sentenced to three concurrent terms of five years each. We affirm.

The violations consisted in the using of interstate telegrams to fraudulently obtain loans of money from a Minnesota farmer-landowner named Kveen. There is no contention that the evidence is insufficient to support the jury's finding of guilt on each of the charges. Nor is a challenge made to any part of the court's instructions.

Reversal is sought upon two bases: (1) that we should adopt as a rule for this Circuit, and make it applicable to the present case, that a prosecutor may not introduce evidence of similar wrongful acts on the part of an accused, even though such proof may otherwise be relevant and competent in the situation, unless he has given notice to the accused of his intention to do so and of the nature of the evidence, within a reasonable time prior to the trial; and (2) that it was in any event error in the present situation to allow the prosecutor to introduce evidence of similar fraudulent acts on the part of appellant which had occurred subsequent to the time of those involved in the indictment.

As to appellant's first ground, the argument made is that we should follow the holding of the Minnesota Supreme Court in State v. Spreigl, 272 Minn. 488, 139 N.W.2d 167, 172–173 (1965), where the Court said:

"Although the responsibility for weighing the delicately balanced and conflicting considerations involved in receiving prior related misconduct is largely within the discretion of the trial court, we conclude that we have gone as far as we think proper in approving its admissibility. Because of the serious misgivings we have long entertained in this connection, we now hold that in the trial of this and future criminal cases where the state seeks to prove that an accused has been guilty of additional crimes and misconduct on other occasions, although such evidence is otherwise admissible under some exception to the general exclusionary rule, it shall not hereafter be received unless within a reasonable time before trial the state furnishes defendant in writing a statement of the offenses it intends to show he has committed, described with the particularity required of an indictment or information, subject, however, to the following exceptions: * * * [not here material]."

It is in effect conceded that the proof made of prior similar fraudulent acts

in which appellant had engaged against three other persons was of such probative competence and relevance and without such outweighing danger of unfair prejudice that the court was entitled to receive it under our several previous decisions. Also, the situation was without any claim at the trial of surprise or of prejudice in the preparation or presentation of appellant's defense, nor was any allowance of time requested and denied in which to consider and deal with any other possible aspect that might be involved.

■ Thus, appellant's first contention is one which is without basis for reversal as legal error within the scope of our traditional review function. Cf. Hansen v. United States, 393 F.2d 763, 770 (8 Cir. 1968); Petschl v. United States, 369 F.2d 769, 774–775 (8 Cir. 1966). But going beyond this, the question of the desirability or undesirability of establishing the rule which appellant advocates, whether as a procedural prescription or as a qualification for the admission of trial evidence, is a matter which, in our judgment, for purposes of uniformity in the federal system, more appropriately belongs within the general realm of the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, or within the special field of the Advisory Committee of the Conference on Rules of Evidence rather than to be dealt with as a question of local policy or standard on the part of the Circuits individually. We accordingly deny appellant's request for a consideration of the adoption of such a rule or holding and the reversing of appellant's conviction upon that basis.

■ As to appellant's other contention for reversal that it was incompetent to admit the similar fraudulent acts engaged in by appellant against a fourth person since these had occurred subsequent to the time of the acts involved in the indictment—we have heretofore contrarily held that "in cases involving fraud, or the intent with which an accused does an act, collateral facts and circumstances, and his other acts of a kindred character, *both prior and subsequent,* not too remote in time, are admissible in evidence". (Emphasis added.) Moffatt v. United States, 232 F. 522, 533 (8 Cir. 1916). Here the subsequent acts permitted to be proved had occurred within two or three months after the time of the last act charged in the indictment. We adhere to our previous holding.

That the mere subsequency of an act to that charged in an indictment does not on that ground alone make it incompetent to establish intent or motive has been recognized in other cases also, such, for example, as United States v. LeVison, 418 F.2d 624, 626 (9 Cir. 1969); Rothering v. United States, 384 F.2d 385, 386 (10 Cir. 1967); United States v. Marchisio, 344 F.2d 653, 667 (2 Cir. 1965).

Since the contentions which have been urged for reversal are wholly legal, there has been no need to set out the story or the details of appellant's fraudulent actions. We shall merely here note that appellant had been for a considerable number of years an ardent anti-communist crusader, who had been able initially to engage in her activities and obtain her livelihood from donations on the part of persons with a similar concern as to communism, including Kveen. As time rolled on, and enthusiasm for continuing to supply such supportive donations apparently wore off, she had had to engage in solicitations from her previous donors, then to resort to getting loans from them, and finally had reached the extremity of making fraudulent representations in order to obtain further loans. Kveen had thus parted with a total of approximately $165,000.00 with the latter and major portions thereof being found by the jury to have been made as loans on the basis of false representations by appellant as to the purposes for which the money was needed and as to the sources from which repayment would be made to him.

Affirmed.