**Robert O. O'REILLY, Appellant,**

v.

**UNITED STATES of America
Appellee.**

**No. 73-1016.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1973.

Decided Aug. 28, 1973.

Rehearing and Rehearing En Banc
Denied Sept. 26, 1973.

Stay Denied Nov. 5, 1973.   See 94
S.Ct. 351.

Certiorari Denied Nov. 19, 1973.
See 94 S.Ct. 546.

Dangerous Drugs (BNDD), made arrangements with a man named Armstrong to buy cocaine from O'Reilly. On two occasions, January 24, 1972, and January 28, 1972, O'Reilly was observed in the Armstrong residence by government agents hiding in a closet. As to each date the agents testified that O'Reilly entered the room and gave Armstrong a condom containing white powder—cocaine. On each date O'Reilly drove to the Armstrong residence in his 1964 Chevrolet.

On April 17, 1972, the agents, after procuring an arrest warrant, "staked out" the O'Reilly residence at about 10 a. m. The agents waited about two blocks away, and O'Reilly was observed leaving his residence and entering his car. A few blocks from the residence the agents arrested O'Reilly and seized his 1964 Chevrolet. The car was finally towed to the agents' office where it was inventoried. The inventory produced marijuana, "baggies", a scale, needles and syringes.

The material obtained during the search was entered into evidence after O'Reilly had taken the witness stand and denied that he sold cocaine to Armstrong, asserting that he went to the Armstrong residence simply to buy marijuana and was tricked by Armstrong so that it only appeared that O'Reilly was selling cocaine to Armstrong.

O'Reilly does not directly challenge the sufficiency of the evidence to support the conviction, but claims that the search was illegal and that the evidence obtained thereby was improperly admitted for that reason and because it was evidence of a subsequent unrelated offense.

*Search and Seizure*

O'Reilly claims that the seizure of the car and the subsequent search thereof were unlawful, thereby necessitating the suppression of the fruits of the inventory. In making our determination of this issue, we turn first to the legality of the seizure of the car.

Sherman Bergstein, Minneapolis, Minn., for appellant.

Neal Shapiro, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before GIBSON, LAY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

Robert O. O'Reilly appeals his conviction, after a jury trial, of violations of 21 U.S.C. § 841(a)(1), sale of cocaine. We affirm the judgment of conviction.

The facts, briefly stated, are these: Agents of the Bureau of Narcotics and

O'Reilly claims the seizure, three months after the sale of cocaine for which he was indicted, was illegal since it was without a warrant and there was no probable cause to believe that he was carrying narcotics in the car on the day of the seizure.

The Government contends that the car was seized under authority of 21 U.S.C. § 881(a)(4) which provides for forfeiture to the United States of all vehicles used for the transportation or sale of narcotics classified as controlled substances; that 21 U.S.C. § 881(b)(1) provides that no seizure warrant is required where, as here, the seizure is incident to an arrest; that the agents had observed O'Reilly using this same car in going to and from the point of sale of cocaine on both January 24 and January 28, 1972; that the delay of three months in making the seizure did not vitiate the Government's right to do so under 21 U.S.C. § 881(a)(4).

It seems clear that the seizure was made pursuant to a valid arrest based on an arrest warrant, the legality of which is not challenged. It is equally clear from the evidence that the officers had probable cause to believe that the car was owned by O'Reilly and had been used by him three months earlier to transport a controlled substance to a point at which it was illegally sold by him to a Government informer. *See* United States v. Weaver, 471 F.2d 18, 19 (5th Cir. 1973). Therefore, the only possible argument O'Reilly can have concerning the seizure is that the seizure was three months after the illegal use.

The cases have uniformly upheld seizures after the initial illegal transaction. United States v. Mills, 440 F.2d 647, 648 (6th Cir.), cert. denied, 404 U.S. 837, 92 S.Ct. 127, 30 L.Ed.2d 70 (1971) [criminal case, seizure occurred "later that day"]; Interbartolo v. United States, 303 F.2d 34, 37 (1st Cir. 1962) [civil forfeiture, 17-day time lapse]; Weathersbee v. United States, 263 F.2d 324, 326 (4th Cir. 1958) [civil forfeiture, 3-month time lapse]; Sanders v. United States, 201 F.2d 158, 159 (5th Cir.

1953) [civil forfeiture; period unstated]; United States v. One 1951 Oldsmobile Sedan, 129 F.Supp. 321, 324 (E.D. Pa.1955) [civil forfeiture, 3-month time lapse]; United States v. One 1952 Ford Victoria, 114 F.Supp. 458, 459 (N.D. Cal.1953) [civil forfeiture, 3-hour time lapse]; In re One 1962 Volkswagen Sedan, 105 Ariz. 315, 464 P.2d 338, 339–340 (1970) [civil forfeiture, 2½ month time lapse]; People v. One 1951 Chevrolet 2-Door, 157 Cal.App.2d 30, 320 P.2d 881 (1958) [civil forfeiture, period unstated].

■■ Two of these cases have recognized that delayed seizure may be justified because of undercover activity. Weathersbee v. United States, *supra,* 263 F.2d at 326; In re One 1962 Volkswagen Sedan, *supra,* 464 P.2d at 339–340. The theory of at least the federal cases appears to be that forfeiture occurs at the moment of illegal use, although physical seizure occurs thereafter. Hence the Government does not waive its right to forfeiture by failure to seize promptly.

■ Likewise, the three-month delay between the offense and the issuance of the arrest warrant was not unlawful. In United States v. Wilson, 342 F.2d 782, 783 (2d Cir.), cert. denied, 382 U.S. 860, 86 S.Ct. 119, 15 L.Ed.2d 98 (1965), a delay of a little over fifteen months between the offense and the issuance of the arrest warrant, in a narcotics case, was upheld where there was no showing that the delay in obtaining the warrant was prejudicial, or part of a deliberate, purposeful and oppressive design for delay.

For these reasons we hold that the seizure was legal and proceed to the question of the search of the car after it was seized.

■ Once the car was legally seized, pursuant to the federal forfeiture statute, the arresting officers were entitled to inventory the contents of the car and take possession of the items found therein. In Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the

Supreme Court held that where an auto was lawfully seized, pursuant to a state statute providing for forfeiture of an auto used in illegal narcotics sales, the later search thereof was reasonable under the fourth amendment and the evidence obtained thereby admissible against Cooper in a narcotics prosecution. In so doing the Supreme Court stated:

> "It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it. It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' United States v. Rabinowitz, 339 U.S. 56, 66 [70 S.Ct. 430, 435, 94 L.Ed. 653]. Under the circumstances of this case, we cannot hold unreasonable under the Fourth Amendment the examination or search of a car validly held by officers for use as evidence in a forfeiture proceeding." *Id.* at 61–62, 87 S.Ct. at 791.

Likewise, in United States v. Young, 456 F.2d 872 (8th Cir. 1972), this Court upheld a search of a car where there was probable cause to arrest the occupants for passing counterfeit notes and where the vehicle was seized under the authority of 49 U.S.C. § 783, a seizure statute relating to counterfeiting which is similar to the narcotics forfeiture statute. In *Young* this Court stated:

> "It is readily apparent that § 783, like the California statute in *Cooper*, does not by its terms specifically authorize a search of vehicles seized thereunder, and that the language of the statute arguably does not justify seizure until evidence of the appropriate illicit activity *has* been found. However, here, as in *Cooper*, the police possessed lawful custody of the automobile for a reason closely related to Young's arrest and the object of the search was related to that arrest. Thus, as in *Cooper*, there is a close re-

lationship of the search to the nature of the arrest, as well as to the reason the vehicle was in custody. These facts and this relationship bring this case within the reach of *Cooper* and require us to conclude that the District Court erred in suppressing the 8 counterfeit notes. We simply cannot hold unreasonable under the Fourth Amendment the search and consequent seizure present under the facts of this case." *Id.* at 875. (Footnotes omitted.)

For these reasons we hold the seizure and subsequent search of the car to have been valid.

### Evidence of Another Crime

In addition to claiming that the search was illegal, O'Reilly's counsel claimed that the evidence obtained in the search was inadmissible because it tended to prove a separate and distinct crime by O'Reilly three months after the commission of the crime with which he is charged. The Government claims that the evidence was admissible to prove motive or intent.

On direct examination by his attorney, O'Reilly admitted that he used marijuana, had been convicted of possession of one pound of marijuana and denied using or selling any other controlled substance. The items which the Government introduced in evidence which were obtained in the search were (1) a 1.5-pound brick of marijuana; (2) 14 plastic "baggies"; (3) a package of marijuana seeds; (4) a package of marijuana "stems"; (5) a sack containing six syringes and five hypodermic needles; (6) a small scale. O'Reilly admitted that the baggies, scale and marijuana belonged to him but denied owning the syringes and needles.

O'Reilly's defense was that he was an occasional marijuana buyer, and that he was tricked by Armstrong. O'Reilly testified that he went to the Armstrong residence expecting to buy marijuana, but instead, upon his arrival, Armstrong, who was momentarily out of sight of the agents hiding in the closet,

handed a condom of cocaine to O'Reilly. When O'Reilly handed it to Armstrong in view of the agents this made it appear that O'Reilly was selling cocaine. By admitting that he had handed the cocaine to Armstrong, but only by way of returning it, O'Reilly indirectly raised the issue of intent. While it is well recognized that evidence of other criminal activity is not admissible, it has also been held that such evidence may be adduced to prove motive or intent, and for certain other limited purposes. *See, e. g.,* United States v. Cochran, 475 F.2d 1080, 1082 (8th Cir. 1973); United States v. Lewis, 423 F.2d 457, 459 (8th Cir.), cert. denied, 400 U.S. 905, 91 S.Ct. 146, 27 L.Ed.2d 142 (1970); C. McCormick, McCormick on Evidence, § 190 at 450–451 (Cleary ed. 1972). Indeed, this Court specifically held in United States v. Lewis, *supra,* 423 F.2d at 459, that "[i]n prosecutions for violation of narcotics laws, the defendant's complicity in other similar narcotics transactions may serve to establish intent or motive to commit the crime charged. . . ."

O'Reilly claims that such a rule should not apply to transactions subsequent to the commission of the alleged crime. However, this Court has recently held that the fact that the other criminal activity took place subsequent rather than prior to the alleged crime "does not on that ground alone make it incompetent to establish intent or motive . . . ." McConkey v. United States, 444 F.2d 788, 790 (8th Cir.), cert. denied, 404 U. S. 885, 92 S.Ct. 223, 30 L.Ed.2d 168 (1971). There, as here, some of the subsequent acts occurred three months after the time of the offense alleged in the indictment.

■ We therefore hold that at least the syringes and needles were properly admitted into evidence for the purpose of showing intent. It should be observed that the Government apparently abided by this Court's suggestion in United States v. Crawford, 438 F.2d 441, 448 (8th Cir. 1970), that the Government should defer evidence of this sort until the defense makes it necessary. *See also* McCormick on Evidence, *supra,* § 190 at 452. Thus when the defense raised the motive and intent question by contending that O'Reilly was nothing more than an occasional marijuana buyer with no reason to sell cocaine, it was proper for the Government to rebut the contention with evidence tending to prove the defendant did in fact have some connection with hard narcotics.

■ As to the marijuana, seeds, stems, scale, and baggies, it is clear that this evidence related solely to marijuana and as such was redundant. The admission of it was not prejudicial to O'Reilly. His defense was based upon his own use of marijuana, admitting on direct examination that he had been convicted of possessing one pound of marijuana. But more importantly, on cross-examination, prior to the introduction of the questioned evidence, O'Reilly admitted that he procured and distributed marijuana for his friends, although he denied selling marijuana as a business venture.

For the reasons hereinbefore expressed, the judgment of conviction is affirmed.

LAY, Circuit Judge (dissenting):

I respectfully dissent. I do so for two distinct reasons.

The defendant was charged with the sale of cocaine in violation of 21 U.S.C. § 841(a)(1). These alleged sales occurred on January 24 and January 28 of 1972. Approximately three months later the agents upon seizure of defendant's vehicle pursuant to 21 U.S.C. § 881(a)(4)–(b)(1) inventoried the seized vehicle and found (1) a one-pound, ten-ounce brick of marijuana; (2) fourteen plastic "baggies"; (3) a package of marijuana seeds; (4) a package of marijuana "stems"; (5) a sack containing six syringes and five hypodermic needles; and (6) a small

scale. The trial court found this evidence was admissible in defendant's trial on the ground that it was relevant to show intent at the time of the alleged sales. I think this ruling prejudicial. This court has held many times in the past that to show intent, the past criminal conduct must be similar in type to that for which the accused is indicted. See, e. g., Dranow v. United States, 307 F.2d 545 (8th Cir. 1962); Williams v. United States, 272 F.2d 40 (8th Cir. 1960). It is improper to admit evidence of a crime unrelated in any particular to the one with which defendant was charged. Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943); United States v. Christian, 427 F.2d 1299 (8th Cir.), cert. denied, 400 U.S. 909, 91 S.Ct. 153, 27 L.Ed.2d 148 (1970); United States v. Bucur, 194 F. 2d 297 (7th Cir. 1952). "If there is a genuine issue in the case as to . . . intent . . . relevant evidence of other crimes is generally admissible. But there must appear to be some real connection between the earlier conviction and the alleged crime beyond the allegation that both acts sprang from a vicious disposition." Wakaksan v. United States, 367 F.2d 639, 645 (8th Cir. 1966) (citations omitted); see also Hurwitz v. United States, 229 F. 449, 453 (8th Cir.), cert. denied, 266 U.S. 613, 45 S.Ct. 95, 69 L.Ed. 468 (1924). The policy behind this requirement was set forth in Weiss v. United States, 122 F.2d 675, 683 (5th Cir.), cert. denied, 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550 (1941).

"The argument as to admissibility is purely from the point of view of the doctrine of chances. . . . Wigmore says that the mind intuitively applies this process of reasoning, namely, 'that an unusual and abnormal element might perhaps be present in one instance, but the oftener similar instances occur with similar results, the less likely is the abnormal element to be the true explanation of them.' "

Here there was no similar act or offense shown. Assuming the evidence of defendant's possession of marijuana was harmless, which to me in light of all attendant circumstances is tenuous, the evidence of defendant's possession of the six syringes and five hypodermic needles was clearly prejudicial. What this has to do with the sale or distribution of cocaine three months before is vague and uncertain. The use of cocaine, unlike heroin, does not necessarily depend on injection apparatus such as needles and syringes, and even if it did, there is no showing that defendant's possession three months later is in any way related to any similar sale or transaction to the crime charged. The possession of the items does not show that defendant is a dealer in hard narcotics. This evidence did nothing more than to fasten the jury's attention upon prejudicial matters, which allowed them to feel that the defendant, even if not guilty of the specific crime the government had charged him with, was a threat to society and should be punished.

A defendant charged with a criminal offense should be tried only on the facts relevant to the crime. When evidence of other acts or offenses is to be admitted for the collateral effect of substantiating "criminal intent"—the government should carry an exacting burden of showing close similarity in both time and circumstance to the offense charged in order to safeguard against the obvious prejudicial effect. This did not happen here. Cf. White v. United States, 294 F.2d 952 (9th Cir. 1961); Paris v. United States, 260 F. 529 (8th Cir. 1919).

However, assuming the evidence can in some way be rationalized as related to the offense charged, I would additionally rule that the evidence should have been excluded as illegally seized. The search is allegedly justified because of the seizure of the automobile pursuant to 21 U.S.C. § 881 and the reasoning of the Supreme Court in Cooper v. California,

386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). The pertinent parts of Section 881 read as follows:

"(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate, the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2) . . . .

"(b) Any property subject to forfeiture to the United States under this title may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when—

(1) the seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;

(4) the Attorney General has probable cause to believe that the property has been used or is intended to be used in violation of this title."

The statutory authority under which the car is seized does not in itself make the warrantless search of the car reasonable. The test of the search is still one of reasonableness under the Fourth Amendment. Cooper v. California, 386 U.S. 58, 87 S.Ct. 788 (1967); Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). The search of the car, some three months after the alleged offense in question, was not in any way "closely related" to the reason the defendant was arrested. There is no showing that there was any connection in point of time and circumstance between the offense and the search. Admittedly the officers did not have probable cause to search the vehi-

cle. Under these circumstances, notwithstanding the consequences flowing from civil forfeiture and holdings which might validate belated seizures, there still remains the question whether a belated search is reasonable under the Fourth Amendment.

Under *Cooper,* supra, the Court held it was reasonable for officers who have *lawfully* seized an automobile to inventory it—thus validating the search. The difficulty with the present case is in resolving whether the automobile was lawfully seized. The statute requires that seizure of property may be only "upon *process* issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court having jurisdiction over the property." (Emphasis ours). No process was obtained here. The majority relies on the government's claim that process is not necessary in the present case because the property to be seized fell under two of the exceptions listed in 21 U.S.C. § 881(b)(1) and (4): first, that the seizure was incident to an arrest and second, that the Attorney General had probable cause to believe that the property had been used or was intended to be used in violation of the subchapter.

The exceptions under subsection 4 dealing with "probable cause" would be self-defeating if they meant that process to seize property is not required *in every case* where the property has been used in violation of the Act. If the process requirement has any meaning it must be that process is necessary unless there exists probable cause that Section 881(a) is being *contemporaneously* violated and the exigencies of the surrounding circumstances make the requirement of obtaining process to seize the vehicle unreasonable and unnecessary. There is no justification that probable cause under subsection (a) should exclude timeliness as a prerequisite to seizure and search as is otherwise read into the contemporaneous requirement governing

probable cause to obtain a search warrant.[1] As stated in House v. United States, 134 U.S.App.D.C. 10, 411 F.2d 725, 728 (1969), cert. denied, 339 U.S. 915, 90 S.Ct. 2220, 26 L.Ed.2d 574 (1970), there is "a necessity for search reasonably referable to a contemporaneous violation of law." In our case the police may have had cause to believe that the vehicle had previously been used to transport narcotics, some three months before. However, the facts surrounding the defendant's belated arrest and the seizure of the automobile did not present any exigency or necessity such that the police could not have obtained lawful process to seize the vehicle. Without such a foundational basis to apply the exceptions in § 881(a)(1) and (4) the statutory requirement of process is otherwise rendered meaningless.

Similarly, I believe that the seizure of the car "incident to the arrest" was likewise illegal for failure to obtain lawful process for seizure of property as required by the statute. The arrest and seizure was not made contemporaneous to the offense in question. The obvious intent behind the statutory exception allowing warrantless seizure incident to arrest is where a felon is apprehended contemporaneous to the crime. When such a timely arrest occurs the requirement of process to seize the vehicle is not then needed since the police are confronted with an immediate justifiable and reasonable basis for impounding the car and inventoring its content. Under such circumstances the seizure and search are closely related in time and circumstance to the commission of the offense. Here the arrest was three months after the offense. Admittedly, the subsequent search had little or nothing to do with the offense under investigation.

I would reverse the judgment of conviction and grant a new trial.

---

[1.] Similarly, the requirement of timeliness for execution of a search warrant has been codified in the Federal Rules of Criminal Procedure. Rule 41(c) and (d) read in pertinent part as follows:

"(c) Issuance and Contents—[A warrant] shall command the officer to search forthwith the person or place named for the property specified.

"(d) Execution and Return with Inventory. —The warrant may be executed and returned only within 10 days after its date." See Spinelli v. United States, 382 F.2d 871 (8th Cir. 1967), rev'd on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).