846 F.2d 75
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antonio Marcus O. WILLIAMS, Defendant-Appellant.
 No. 87-5109.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 4, 1988.
Decided May 6, 1988.
 
 Thomas J. Foltz for appellant,
 David Shepardson Cayer, Assistant United States Attorney (Henry E. Hudson, United States Attorney on brief) for appellee.
 Before JAMES DICKSON, PHILLIPS and ERVIN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Williams appeals his convictions on three counts of bank fraud in violation of 18 U.S.C. Secs. 2 and 1344[1] and a single count of using a false social security number to obtain a thing of value in violation of 42 U.S.C. Sec. 408[2]. Finding no error in the disposition of the pretrial motions, and finding substantial evidence to support the jury's verdict, we affirm the convictions.
 
 I.
 
 2
 Antonio Marcus O. Williams was indicted on April 6, 1987, in the Eastern District of Virginia based on activities he carried out with one Joshua Phillips. Phillips and Williams opened a checking account at the Yorktown branch of Sovran Bank in Falls Church, Virginia, on January 23, 1987. Phillips executed the signature cards and provided a social security number and a Florida drivers' license. The drivers' license contained the photograph of someone other than Phillips. Phillips listed his cousin "Stacy Curry" as his nearest relative. The account was opened with $100.00.
 
 
 3
 On February 26, 1987, the two men returned to the bank. Phillips asked assistant manager Wendy Sullivan for an automatic teller card. He wrote his name on a piece of paper for her. He spelled his name differently than he had on the signature cards he signed in January. He identified Williams as his cousin. Sullivan had Phillips sign a new automatic teller application.
 
 
 4
 On February 27, 1987, a check for $5,350.75 was deposited into the account. On March 2, 1987, a check for $1,600.00 was deposited into the account. The checks were dishonored: the first was drawn on insufficient funds; the second was drawn on a closed account. The final balance for the account was $4.05. Also on March 2, Williams returned to the bank alone and presented teller Marilyn Campbell with a check for $500.00 drawn on the Phillips account and payable to Stacy Curry. He presented a California drivers' license with the name Stacy Curry, but again the photo was of another person. The check was not cashed.
 
 
 5
 On March 4, 1987, the two men went to the Merrifield office of the bank. Williams drove to the drive-in window. He asked teller Lauren Smith for the date and repeated the date to Phillips who wrote the check. Phillips gave a Florida drivers' license and the check to Williams who passed them on to Smith. The $500.00 check was made payable to cash. Smith held the two men at the window until local police arrived.
 
 
 6
 Fairfax County Police Officer Brian Patterson asked Williams for some identification. Williams offered him the California drivers' license with the name Stacy Curry. When asked about the difference in the physical description on the license and his appearance, Williams said that the identification was actually of his friend.
 
 
 7
 Larry Ziegler, a handwriting examiner, testified that it was his belief that Williams wrote the Stacy Curry endorsement on the March 2 check. Ziegler also opined that Phillips had signed both checks that the men tried to negotiate. Finally, Ziegler concluded that Phillips likely endorsed the $5,350.75 and $1,600.00 bad checks which were deposited into the account. John Butler, United States Secret Service fingerprint examiner identified prints on the $500.00 check payable to Stacy Curry as those of Williams.
 
 
 8
 The government's last witness was Thomas Burke, a detective from Ventura, California, who testified that he had arrested Williams in 1985 for a similar offense.
 
 
 9
 Williams argues that the government presented insufficient evidence to convict him of bank fraud and the use of a false social security number to obtain a thing of value. He also argues that he should have been granted a trial continuance in order to study his prior record and the report of the fingerprint examiner. We find no merit in these claims.
 
 II.
 
 10
 We turn first to the sufficiency of the evidence claim. The judgment below must be affirmed if there is substantial evidence, as viewed in the light most favorable to the government, from which a jury might rationally find guilt beyond a reasonable doubt as to each element of the offense. Jackson v. Virginia, 443 U.S. 397 (1979). The facts presented above provide ample evidence for the jury to infer that Williams was acting with fraudulent intent and he was trying to withdraw cash in excess of the account balance.
 
 
 11
 At trial, the government called eleven witnesses, including two forensic experts, one Fairfax Police Officer, one bank manager, two assistant bank managers, one secret service agent, two tellers, one bank operating supervisor, and the California detective. Those witnesses pieced together a story wherein Williams was present when Phillips opened the account with false identification. Williams was falsely identified as Phillips' cousin, Stacy Curry. Phillips misspelled his last name when he requested an automatic teller card. Williams, on two separate occasions, tried to withdraw $500.00 from the account. He was told on the first occasion that the account lacked sufficient funds, yet he returned two days later and presented another $500.00 check. Forensic experts tied Williams to each of those transactions. The only deposits to the account which could support such withdrawals were the dishonored checks forged by Phillips. Finally, Williams had been arrested for an almost identical scheme in California. There, he had opened an account with a small amount of money, deposited bad checks, and tried to withdraw money using altered forms of identification. Substantial evidence exists to support the bank fraud convictions.
 
 
 12
 Substantial evidence also exists to support Williams' conviction for using a false social security number under 42 U.S.C. Sec. 408. The government showed at trial that Williams applied for a Virginia drivers' license and provided a social security number belonging to another. The jury could infer the requisite intent to deceive based upon the evidence introduced at trial indicating that Williams had perpetrated similar acts in California. United States v. Bales, 813 F.2d 1289 (4th Cir.1987).
 
 
 13
 Williams also argues that the district court erred in denying his motion for a continuance made on the day of trial. He asserts that he was entitled to a continuance to study his criminal record and to explore his questions about the fingerprint examination. We think the district court did not err in denying the motion.
 
 
 14
 Williams objects because the government presented evidence of his prior bad acts in California through the testimony of Detective Burke without disclosing, prior to trial, its plans to do so. The government is not required to give notice of its intention to prove "bad acts" or prior criminal conduct pursuant to the terms of rule 404(b) or by case law interpreting that rule. United States v. Corey, 566 F.2d 429, 431 n. 5 (2nd Cir.1977); United States v. Barrett, 539 F.2d 244, 249 (1st Cir.1975); United States v. Miller, 520 F.2d 1208, 1211 (9th Cir.1975); McConkey v. United States, 444 F.2d 788, 790 (8th Cir.1971). Furthermore, the government represented to this court that it maintained an open file policy in this case, and that the defendant did know that Detective Burke would be testifying. Williams' record from California was not produced because the case was dropped when the complaining witness failed to appear. Hence no records existed. Finally, we note that Williams had ample opportunity to cross examine and question the detective's memory of the two-year old arrest during the trial in this case.
 
 
 15
 Williams' further argument that he should have been granted a continuance because the fingerprint examination report was incomplete is equally unpersuasive. Williams never challenged the completeness of the report below. He received a copy of the report of the fingerprint examiner and had time to study the report. He also had ample time to cross-examine the expert during the trial as to any items that the expert considered. The district court cautioned defense counsel that if he went beyond the scope of the direct examination he may elicit testimony damaging to his client. Defense counsel chose not to pursue the matter further. Williams' motion for a continuance was without substance and the district court properly denied such relief.
 
 The convictions are
 
 16
 AFFIRMED.
 
 
 
 [1]
 Sec. 2. Principals
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
 Sec. 1344. Bank fraud
 (a) Whoever knowingly executes, or attempts to execute, a scheme or artifice--
 (1) to defraud a federally chartered or insured financial institution; or
 (2) to obtain any of the moneys, funds, credits, assets, securities or other property owned by or under the custody or control of a federally chartered or insured financial institution by means of false or fraudulent pretenses, representations, or promises, shall be fined not more than $10,000, or imprisoned not more than five years, or both.
 (b) As used in this section, the term "federally chartered or insured financial institution" means--
 (1) a bank with depostis insured by the Federal Deposit Insurance Corporation;
 (2) an institution with accounts insured by the Federal Savings and Loan Insurance Corporation;
 (3) a credit union with accounts insured by the National Credit Union Administration Board;
 (4) a Federal home loan bank or a member, as defined in section 2 of the Federal Home Loan Bank Act (12 U.S.C. 1422), of the Federal home loan bank system; or
 (5) a bank, banking association, land bank, intermediate credit bank, bank for cooperatives, production credit association, land bank association, mortgage association, trust company, savings bank, or other banking or financial institution organized or operating under the laws of the United States.
 
 
 [2]
 That section provides in relevant part:
 Sec. 408 Penalties
 Whoever--
 * * *
 (g) for the purpose of causing an increase in any payment authorized under this subchapter (or any other program financed in whole or in part from Federal funds), or for the purpose of causing a payment under this subchapter (or any such other program) to be made when no payment is authorized thereunder, or for the purpose of obtaining (for himself or any other person) any payment or any other benefit to which he (or such other person) is not entitled, or for the purpose of obtaining anything of value from any person, or for any other purpose--
 * * *
 (2) with intent to deceive, falsely represents a number to be the social security account number assigned by the Secretary to him or to another person, when in fact such number is not the social security account number assigned by the Secretary to him or to such other person.